UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                    │
│ DATE FILED:_ 3/23/2021 __                 │
└─────────────────────────────────────────┘
```

MICHAEL ORLANDO, *and the other stockholders of Fit Pay, Inc., with Michael Orlando as Shareholder Representative*,

Plaintiffs,

-against-

NXT-ID INC., CROWDOUT CAPITAL, LLC, and GARMIN INTERNATIONAL, INC.,

Defendants.

1:20-cv-1604 (MKV)

OPINION & ORDER GRANTING
MOTIONS TO DISMISS
OF GARMIN AND CROWDOUT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Michael Orlando and the other stockholders of non-party Fit Pay, Inc., through Orlando as their contractually-designated shareholder representative, bring this action asserting claims against Defendants Nxt-ID, Inc., Garmin International, Inc., and CrowdOut Capital, LLC. Before the Court are the motions of Garmin [ECF #45] and CrowdOut [ECF #40] to dismiss the claims against them. For the reasons set forth below, those motions are GRANTED.

## I.   BACKGROUND[1]

Plaintiffs are investors in Fit Pay, Inc., a "start-up[]" that developed "contactless payment technology" [ECF #66 ("SAC") ¶ 1]. They designated Plaintiff Michael Orlando their

---

[1] The facts are taken from the Second Amended Complaint [ECF #66], hereinafter "SAC." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true."). The Court also relies on the documents attached to the SAC: (1) the merger agreement between Fit Pay, Inc. and Nxt-ID, Inc. [ECF #66-1 ("Merger Agreement")]; (2) the loan agreement between Nxt-ID and CrowdOut Capital, LLC [ECF #66-2 ("Loan Agreement")]; and (3) the stock purchase agreement between Nxt-ID and Garmin International, Inc. [ECF #66-3 ("SPA")]. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("In addition, we may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").

"Shareholder Representative" in the contract at the heart of all of Plaintiffs' claims, the merger agreement [ECF #66-1 ("Merger Agreement")] in which Plaintiffs sold Fit Pay to Defendant Nxt-ID, Inc., a "technology services company."  SAC ¶¶ 2, 13.  Specifically, under the Merger Agreement, Orlando "was designated by the Fit Pay Shareholders to act as Shareholder Representative" and "authorized to act as Fit Pay Shareholders' agent and attorney-in-fact and is permitted to take any and all actions required or necessary with respect to the rights of the Fit Pay Shareholders with regard to all matters pertaining to the Merger Agreement."  *Id.*  ¶ 13; *see* Merger Agreement § 2.13.

Defendant Garmin International, Inc. is a Kansas corporation with its principal place of business in Kansas.  SAC ¶ 16.  Garmin is known for GPS devices, including car navigation systems and smart watches.  *Id.* ¶ 31.  In 2015, Fit Pay began to develop a relationship with Garmin, and, as a result of its "contractual relationship with Fit Pay," Garmin created "Garmin Pay," a contactless payment system on Garmin devices.  *Id.* ¶¶ 1, 6, 24, 31.

In May 2017, Plaintiffs decided to sell the company, and Orlando executed the Merger Agreement with Nxt-ID.  SAC ¶ 2.  The Merger Agreement provided that, after the sale, Fit Pay shareholders would continue to "receive an Earnout Payment equal to 12.5%" of revenue generated by the Fit Pay technology from October 1, 2017 to September 30, 2021.  Merger Agreement § 2.3(b)(i).  The Merger Agreement further provided that this Earnout Payment could "not be modified or decreased if, in the future, there is an *internal* ownership, organizational or operational change within" Nxt-ID.  *Id.* § 2.3(b)(iii)(B) (emphasis added).  Whether Nxt-ID breached the Merger Agreement—because it failed to pay Plaintiffs Earnout Payments after it later sold Fit Pay to Garmin—is the subject of separate motion practice between Plaintiffs and Nxt-ID [ECF #105, 107, 112, 116].

Sometime after it purchased Fit Pay, Nxt-ID got into significant financial trouble.  In May 2019, Nxt-ID took out a large loan from Defendant CrowdOut Capital, LLC [ECF #66-2 ("Loan Agreement")].  SAC ¶ 51.  The Loan Agreement required Nxt-ID to sell Fit Pay.  *Id.* ¶ 53; Loan Agreement § 6.20.

On September 9, 2019, Garmin entered into a Stock Purchase Agreement with Nxt-ID for the purchase of "100% of Fit Pay's stock" [ECF #66-3 ("SPA")].  SAC ¶ 63.  The SPA "disclaim[ed] any obligation by Garmin to make Earnout Payments to the Fit Pay Shareholders." *Id.* ¶ 7; *see* SPA § 3.13.  The SPA also disclaimed "any obligation to provide reports regarding sales and revenues" in connection with the Earnout Payments.  SPA § 3.13.

After Nxt-ID sold Fit Pay to Garmin, it paid CrowdOut most of the proceeds of the sale. *See* SAC ¶ 10.  None of the defendants have paid Plaintiffs the Earnout Payments the Plaintiffs allege they are owed.  *See id.* ¶ 11.

Plaintiffs initiated this action by filing a complaint in February 2020.  Defendants Garmin and CrowdOut responded with pre-motion letters seeking leave to file motions to dismiss the complaint [ECF #25, 27].  The Court issued an Order, dated May 15, 2020, explaining that if Plaintiff chose to amend their complaint, it would be their last opportunity to amend based on the arguments raised in the pre-motion letters [ECF #37 ("May 15, 2020 Order")].  Plaintiffs filed a first amended complaint, and Garmin and CrowdOut filed their motions to dismiss [ECF #40, 41 ("CrowdOut Mem."), 42, 45, 46, 47 ("Garmin Mem."), 50 ("Pl. Opp. to CrowdOut"), 51 ("Pl. Opp. to Garmin"), 57, 58].

Based on the Court's obligation to satisfy itself that subject matter jurisdiction exists, the Court later instructed Plaintiffs to further amend their pleading to properly allege diversity jurisdiction with respect to CrowdOut, even though CrowdOut had not raised the issue in its pre-

motion letter [ECF #64].  *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000).

Plaintiffs filed the Second Amended Complaint [ECF #66 ("SAC")], which is the operative

pleading.  *See Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d

Cir. 1998) (an amended complaint supersedes an earlier pleading).  Garmin and CrowdOut

informed the Court that they wished to rely on their fully-briefed motions to dismiss the first

amended complaint in response to the Second Amended Complaint [ECF #67, 68].  The Court,

therefore, deems the motions of Garmin and CrowdOut to dismiss the first amended complaint

motions to dismiss the Second Amended Complaint.  *See Pettaway v. National Recovery*

*Solutions, LLC*, 955 F.3d 299, 304 (2d Cir. 2020) ("the district court has the option of either

denying the pending motion as moot or evaluating the motion in light of the facts alleged in the

amended complaint").

The Court held oral argument on the motions to dismiss of Garmin and CrowdOut on

March 18, 2021 ("March 18 oral argument").

## II.  LEGAL STANDARDS

### A.  Motion To Dismiss for Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, under Rule 12(b)(2), the

"plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The plaintiff must

make a *prima facie* showing that the Court has personal jurisdiction over the defendant.  *Thomas*

*v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  "This *prima facie* showing 'must include an

averment of facts that, if credited by the ultimate trier of fact, would suffice to establish

jurisdiction over the defendant.'"  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673

(2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.

2010)).  "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).  However, "[c]onclusory non-fact-specific jurisdictional allegations" or a "legal conclusion couched as a factual allegation" will not establish a *prima facie* showing of jurisdiction.  *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

B.  Motion To Dismiss for Failure To State a Claim

To survive a motion to dismiss for failure to state a claim on which relief may be granted, under Rule 12(b)(6), the plaintiff needs to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor."  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d. Cir. 2011).  The Court, however, is "not required to credit conclusory allegations or legal conclusions."  *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).

### III.    DISCUSSION

A.  Plaintiffs Fail To Make a *Prima Facie* Showing of Personal Jurisdiction over Garmin.

Garmin argues that the Court must dismiss Plaintiffs' claims against Garmin, pursuant to Rule 12(b)(2), because Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over Garmin.  Plaintiffs argue that "Garmin has more than sufficient contacts with New York to

subject it to specific personal jurisdiction." Pl. Opp. to Garmin at 9. The Court concludes that Plaintiffs fail adequately to allege personal jurisdiction.

On a motion to dismiss for lack of personal jurisdiction, a court must "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York," and, if so, the court must "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Under New York law, a plaintiff must show that either the defendant was subject to general jurisdiction in New York, or that an out-of-state defendant was subject to specific jurisdiction because it "committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302." *DeLorenzo v. Viceroy Hotel Group, LLC*, 757 F. App'x 6, 8 (2d Cir. 2018).

Plaintiffs do not argue that Garmin is subject to general personal jurisdiction in New York, and, as such, the Court deems any such argument waived. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 & n.19 (S.D.N.Y. Sept. 28, 2012) (plaintiff "concedes through silence" in brief). Indeed, at the March 18 oral argument, Plaintiffs' counsel conceded that Garmin is not subject to general personal jurisdiction in New York. In any event, Garmin is a Kansas company with its principal place of business in Kansas. SAC ¶ 16. Plaintiffs offer no allegations to support the conclusion that this is the rare instance in which such a company is, nevertheless, "essentially at home" in New York. *Sonera Holding*, 750 F.3d at 225.

Plaintiffs fail adequately to allege that Garmin is subject to specific personal jurisdiction for Plaintiffs' claims of tortious inference with the Merger Agreement and unjust enrichment. Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of*

*Cal.*, -- U.S. ---, 137 S. Ct. 1773, 1780 (2017).  When there is no such connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* at 1781.

Plaintiffs first argue that Garmin is subject to jurisdiction under section 302(a)(2) of New York's long-arm statute for Plaintiffs' claim of tortious interference with the Merger Agreement. Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act," or who committed the tortious act within the state "through an agent."  *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28–29 (2d Cir. 1997).  Plaintiffs assert in their brief that "Garmin and its agents committed tortious acts in New York."  Pl. Opp. to Garmin at 13.

Plaintiffs fail to establish a *prima facie* showing of jurisdiction under section 302(a)(2) because Plaintiffs fail to allege any tortious acts in New York.  At the March 18 oral argument, Plaintiffs' counsel conceded that any tort was committed "through an agent."  Specifically, Plaintiffs allege that, as part of its "due diligence process" before acquiring Fit Pay, Garmin hired "a New York-based attorney, to evaluate Fit Pay's banking relationships and other aspects of the Fit Pay business."  SAC ¶ 66.  However, conducting due diligence is not a tort.  When pressed at oral argument, Plaintiffs' counsel failed to identify any allegedly tortious acts by Gamin's New York attorney.

Plaintiffs contend, without support, that any "New York-based acts . . . in furtherance of Garmin's tortious conduct . . . satisfy [section] 302(a)(2)."  Pl. Opp. to Garmin at 13.  However, Plaintiffs cite inapposite cases in which a defendant's attorney or agent carried out a tort on the defendant's behalf in New York.  *See Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418, 431 (E.D.N.Y. 2012) (attorney embezzled for defendant); *Modern Computer Corp. v. Ma*, 862 F.

Supp. 938, 944 (E.D.N.Y. 1994).  There is no similar allegation here.  Instead, Plaintiffs merely

assert that Garmin "operationalized [its attorney's] due diligence findings by structuring the

Garmin SPA" to tortiously interfere with the Merger Agreement.  Pl. Opp. to Garmin at 13.  This

is not enough.  The New York Court of Appeals has made clear that when the statute says the

defendant or agent must "commit[] a tortious act within the state," it means a tort must be

committed in the state.  *See Bensusan Restaurant*, 126 F.3d at 28 (citing *Feathers v. McLucas*,

15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)).

Plaintiffs also argue that Garmin is subject to jurisdiction for their claims under to section

302(a)(1) of the long-arm statute.  "To determine the existence of jurisdiction under section

302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York

and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van

Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting N.Y. C.P.L.R. § 302(a)(1)); *see

Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140,

1142, 818 N.Y.S.2d 164, 166 (2006).  In evaluating the first part of the test, whether the

defendant transacts business, "[c]ourts look to 'the totality of the defendant's activities within the

forum" to decide whether the defendant engaged in "purposeful activity" in New York.  *Best Van

Lines*, 490 F.3d at 246 (quoting *Sterling National Bank & Trust Co. of N.Y. v. Fidelity Mortgage

Investors*, 510 F.2d 870, 873 (2d Cir. 1975)).  In evaluating the second part of the test, a court

must decide whether there is a "nexus" between the plaintiff's claim and the defendant's business

transactions in New York.  *Id*.  If Plaintiff fail to allege a nexus between Garmin's purposeful

New York activities and Plaintiff's specific claims, Plaintiffs fail to establish a *prima facie* case of jurisdiction under section 302(a)(1).

The Court has little doubt that Garmin transacts business in New York, but Plaintiffs fail to allege that their claims arise out of Garmin's New York business activities.  Plaintiffs allege, albeit largely in conclusory fashion, that Garmin sells goods, advertises, and derives revenue from its sales in New York.  SAC ¶¶ 23 (asserting the legal conclusion that the Court has personal jurisdiction over Garmin because "it contracts to supply goods or services within New York"), 77 (alleging that a "substantial number of [Garmin's] customers are located in New York, where Garmin advertises and sell products through dozens of dealers, sponsors races and other events, and funds major billboard campaigns to support its product launches").  Plaintiffs also allege that, as part of the companies' preexisting business relationship, well before Garmin negotiated the SPA to acquire Fit Pay from Nxt-ID, members of "Garmin's product, business development, and marketing teams" and "Fit Pay's team" had business meetings in New York. *Id.*  ¶ 47; *accord* 74 ("Fit Pay representatives met with Garmin's product, business development, and marketing teams and Mastercard and American Express in New York City on at least two occasions in early to mid-2017").

Plaintiffs contend that the Court should consider Gamin's 2017 meetings with Fit Pay in New York and all of the revenue Garmin "continues to solicit and reap" from New York to rule that there is a sufficient nexus between the "combined effect" of Gamin's New York activities and Plaintiffs' general contentions that Garmin took advantage of their preexisting relationship with Fit Pay and unfairly profited from Fit Pay's technology.  Pl. Opp. to Garmin at 11–12.  This simply is not how specific jurisdiction works.  Having conceded that Garmin is not subject to the Court's general jurisdiction, Plaintiffs must offer the Court allegations about Garmin's activities

in New York acts that give rise to Plaintiffs' claims against Garmin for tortious interference with the Merger Agreement and unjust enrichment.  Without an alleged nexus to Plaintiffs' claims, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1780.  Furthermore, Plaintiffs' contentions that Garmin "took advantage of the opportunity" to buy Fit Pay for a low price and that Garmin derives revenue from that acquisition are not tantamount to claims for tortious interference and unjust enrichment.  Pl. Opp. at 1.  To establish jurisdiction, Plaintiffs must offer a nexus between Garmin's New York activity and their specific claims.

Plaintiffs describe their claims against Garmin as claims based on Garmin's "knowledge" of the Merger Agreement and "allegations concerning Garmin's improper actions taken during the negotiation and execution of the Garmin SPA."  Pl. Opp. at 15, 21; *see* SAC ¶¶ 104, 108. The only allegation that even arguably ties these claims to New York in any way is the allegation, mentioned above, that Garmin hired a New York attorney to conduct due diligence. *See* SAC ¶ 66.  However, hiring an attorney who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough for personal jurisdiction under Section 302(a).  *See PaineWebber Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 120 (S.D.N.Y. 1990) ("'Get me a New York lawyer,' without more, is not an invocation of *in personam* jurisdiction in the forum state of the lawyer's practice"); *Amins v. Life Support Med. Equip. Corp.*, 373 F. Supp. 654, 658 (E.D.N.Y. 1974); *Law Research Serv., Inc. v. Crook*, 36 A.D.2d 912, 912, 320 N.Y.S.2d 851, 851 (1971).

Courts have concluded that a defendant was subject to personal jurisdiction under section 302(a)(1) where a defendant's relationship with a New-York based attorney or agent involved sustained contacts with New York and the agent's actions formed the basis for the plaintiff's

claims. *See Newbro v. Freed*, 337 F. Supp. 2d 428, 433 (S.D.N.Y. 2004) (concluding that the court had personal jurisdiction where non-resident defendants had a "two-year" relationship with a New York broker that involved several "face-to-face visits" and "substantial and ongoing communications" because "the alleged misconduct of [the] New York broker lies at the heart of this action"); *see also Fischbarg v. Doucet*, 9 N.Y.3d 375, 384, 880 N.E.2d 22, 29 (2007).  This case is not similar.  The SAC says nothing about Garmin's contacts with its attorney in New York.  It does not allege that she negotiated the SPA.  Moreover, contrary to the suggestions in Plaintiffs' brief, the SAC never alleges that Garmin's New York attorney discovered the Merger Agreement, or germane details about the Merger Agreement, or advised Garmin how to procure its breach.  Rather, Plaintiffs specifically allege that "Fit Pay kept Garmin informed about the Nxt-ID merger" as it was happening and shared a copy of the Merger Agreement with Garmin when it "was formally executed," long before Garmin hired counsel in New York.  SAC ¶ 44.  Plaintiffs also allege that, while the New York attorney conducted "due diligence" for the SPA, several other "representatives for Garmin reached out to Fit Pay" about "the terms of the Merger Agreement."  *Id*. ¶ 66.

In their brief, Plaintiffs assert that Garmin also negotiated the SPA with Nxt-ID's New-York based attorneys.  Pl. Opp. to Garmin at 11 (citing SAC ¶¶ 36, 51, 62, 66).  However, the Second Amended Complaint contains no such allegations.  *See* SAC ¶¶ 36 (alleging that "Nxt-ID's legal team" for the Merger Agreement with Plaintiffs was "based in New York"), 51 (alleging that Nxt-ID "engaged a New York-based banker and a New York-based law firm to help negotiate and execute the CrowdOut Loan"), 62 (alleging that Garmin began negotiating the SPA with Nxt-ID, but not alleging that Nxt-ID hired New-York based attorneys in connection with the SPA, nor otherwise mentioning New York), 66 (alleging that Garmin hired a New-York

based attorney).  The Court cannot exercise personal jurisdiction over Garmin based on the agents or activities of Nxt-ID.  Thus, Plaintiffs have failed to allege that Garmin "engaged in some purposeful activity in New York in connection with the matter[s] in controversy," which are Garmin's alleged tortious interference with the Merger Agreement and allegedly improper actions in connection with the SPA.  *PaineWebber*, 748 F. Supp. at 118.

Because the Second Amended Complaint does not adequately allege personal jurisdiction over Garmin, the Court grants Garmin's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In its May 15, 2020 Order, the Court specifically admonished Plaintiffs that they would not be afforded another opportunity to amend their pleading to correct this deficiency [ECF #37].  Because the Court concludes that it lacks personal jurisdiction over Garmin, the Court does not reach the merits of Plaintiffs' claims against Garmin for tortious interference and unjust enrichment.

B.  Plaintiffs Fail To State a Claim for Conversion Against CrowdOut.

Under New York law, an "action for conversion of money may be made out 'where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'"  *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 547, 903 N.Y.S.2d 368, 369 (1st Dep't 2010) (quoting *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 124, 559 N.Y.S.2d 704 (1st Dep't 1990)).  That is, a "conversion occurs when funds designated for a particular purpose are used for an unauthorized purpose."  *Lemle v. Lemle*, 92 A.D.3d 494, 497, 939 N.Y.S.2d 15, 18 (1st Dep't 2012).  "New York law . . . requires the plaintiff to have 'ownership, possession or control of the money' before its conversion," not merely the right to possess it.  *ESI, Inc. v. Coastal Power Production Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (quoting *Aramony v. United Way of America*, 949 F. Supp. 1080, 1086 (S.D.N.Y.

1996)); *accord DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 660

(S.D.N.Y. 2011); *Komlossy v. Faruqi & Faruqi, LLP*, 2017 WL 722033, at *10 (S.D.N.Y. Feb.

23, 2017), aff'd, 714 F. App'x 11 (2d Cir. 2017).

      Plaintiffs fail to state a claim for the conversion of money.  Plaintiffs fail to allege that "a

specific, identifiable fund," *Thys*, 74 A.D.3d at 547, was "designated for a particular purpose,"

but was, instead, "used for an unauthorized purpose," *Lemle*, 92 A.D.3d at 497.  Rather, Plaintiffs

allege only that they were owed some amount of Earnout Payments "in excess" of the

$2,183,265 that Nxt-ID paid to CrowdOut to discharge the loan that CrowdOut had provided to

Nxt-ID.  SAC ¶ 92; *accord id.* ¶ 10.

      The pleadings establish that there was no "specific fund" that was "designated" for the

Earnout Payments.  *Thys*, 74 A.D.3d at 547; *Lemle*, 92 A.D.3d at 497.  Indeed, Plaintiffs make

clear that, before Garmin acquired Fit Pay, there was no money for Earnout Payments, or perhaps

anything else.  Plaintiffs specifically allege that "Nxt-ID was struggling to keep the lights on."

SAC ¶ 62.  Once Garmin purchased Fit Pay, Nxt-ID used the proceeds of the sale to pay money

owed to CrowdOut, even though Nxt-ID also allegedly owed money to Plaintiffs.  *See id.* ¶¶ 68,

69.  Plaintiffs fail to offer any non-conclusory allegations that the sales proceeds were in any real

sense "designated" for the Earnout Payments.  Nor do Plaintiffs offer support in their brief for

their conclusory allegations that the proceeds "legally belonged to the Fit Pay Shareholders" and

that Nxt-ID's payment to CrowdOut was "an unauthorized early prepayment on the CrowdOut

Loan."  *Id*. ¶ 69; *see Edwards*, 938 F.3d at 12 (court not required to credit conclusory allegations

or legal conclusions).

      Plaintiffs make much of their allegations that CrowdOut made "verbal assurances" that

Plaintiffs would be paid and acknowledged Nxt-ID's obligation to make the Earnout Payments in

one version of the contract between Nxt-ID CrowdOut.  *See* SAC ¶¶ 54, 56.  These allegations are immaterial.  Plaintiffs do not allege that any "verbal assurances" rose to the level of a contract between CrowdOut and Plaintiffs, and Plaintiffs were not party to any of the contracts between CrowdOut and Nxt-ID.  Plaintiffs' contract and its quarrel are with Nxt-ID.  It appears, however, that Nxt-ID is not in a position to pay Plaintiffs.  That Nxt-ID used the only money it had to pay CrowdOut, instead of Plaintiffs, does not make CrowdOut liable to Plaintiffs for conversion.  Moreover, Plaintiffs do not allege that they "owned, possessed, or controlled" the money before its alleged conversion—only that they "possessed a contractual right" to the Earnout Payments, and courts have rejected similar claims.  *Komlossy*, 2017 WL 722033, at *10. Accordingly, Plaintiffs' conversion claim is dismissed.

## C.  Plaintiffs Fail To State a Claim for Unjust Enrichment Against CrowdOut.

To state a claim for unjust enrichment, a plaintiff must allege (1) "that the defendant was enriched at the plaintiff's expense" and (2) "that equity and good conscience require the plaintiff to recover the enrichment from the defendant."  *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009).  New York courts and courts in this district have "consistently held" that the "existence of a contract governing the subject matter of the dispute" precludes a claim for unjust enrichment, even if the defendant was not a party to the relevant contract.  *American Medical Association v. United Healthcare Corp.*, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007) (collecting cases); *see Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998); *Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896, at *12–13 (S.D.N.Y. Oct. 15, 2008), *aff'd sub nom.*, *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010); *Vitale v. Steinberg*, 307 A.D.2d 107, 111, 764 N.Y.S.2d 236, 239 (1st Dep't 2003). Moreover, with respect to the requirement that "equity and good conscience" require recovery,

courts have dismissed claims for unjust enrichment—at the pleading stage—on the ground that a defendant is "entitled to keep [money] it earned for services rendered." *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007); *accord Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016).

Plaintiffs' claim for unjust enrichment against CrowdOut is precluded by the existence of the Merger Agreement. The "subject matter of the dispute" is whether Nxt-ID was required to pay Plaintiffs the money that Nxt-ID paid to CrowdOut. *American Medical Association*, 2007 WL 683974, at *10. If Nxt-ID was not required to pay Plaintiffs what it paid CrowdOut, there is no basis to allege that CrowdOut was "enriched at [Plaintiffs'] expense." *Giordano*, 564 F.3d at 170. The question of Plaintiffs' entitlement to the Earnout Payments is governed by the Merger Agreement. Thus, the Merger Agreement governs the subject of Plaintiffs' dispute with CrowdOut, notwithstanding that CrowdOut was not a party to the Merger Agreement. *See*, *e.g.*, *Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896, at *13.

Furthermore, neither equity, nor good conscience requires that Plaintiffs recover from CrowdOut. It was not unfair for CrowdOut to collect on the loan it made to Nxt-ID. *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d at 532. Accordingly, Plaintiffs' claim for unjust enrichment is dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the motions to dismiss of Defendants Garmin [ECF #45] and CrowdOut [ECF #40] are GRANTED.

**SO ORDERED.**

Date:  **March 23, 2021**                                                      **MARY KAY VYSKOCIL**
       **New York, NY**                                                        **United States District Judge**